UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Ralph Holder


     v.                              Civil No. 09-cv-341-JD
                                     Opinion No. 2010 DNH 212

Town of Newton, et al.


O R D E R


     Ralph Holder, proceeding pro se, brought suit against the
Town of Newton; Newton police chief, Lawrence E. Streeter; a
Newton police officer, Michael Jewett, and the town prosecutor,
Jill Cook, alleging violations of his civil rights, arising from
events that occurred when Holder was arrested, surrendered his
firearms, was released, was denied a license to carry firearms,
and successfully appealed that decision.  At present, Holder's
remaining claims are six federal civil rights claims and six
state law claims against the Town of Newton, Chief Streeter, and
Officer Jewett.  The defendants move for summary judgment, and
Holder objects.  Holder also seeks subpoenas related to the case.


I.  Motion for Summary Judgment

     In their reply to Holder's objection to the motion for
summary judgment, the defendants challenge Holder's affidavit
submitted in support of his objection.  The defendants contend

that the affidavit consists of legal conclusions and statements that are not based on Holder's personal knowledge.  They ask the court to disregard the improper parts of the affidavit.  Holder did not respond to the defendants' objection to his affidavit.

"Under Rule 56(e), an affidavit at the summary judgment stage must 'be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.'"  Livick v. The Gillette Co., 524 F.3d 24, 28 (1st Cir. 2008) (quoting Fed. R. Civ. P. 56(e)(1)).  In addition, personal knowledge pertains to facts "as opposed to conclusions, assumptions, or surmise." Livick, 524 F.3d at 28.  Statements based on the affiant's belief do not comply with the personal knowledge requirement of Rule 56(e).  See SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 138 (2d Cir. 2009).

The defendants are correct that most of Holder's affidavit does not comply with the personal knowledge requirement of Rule 56(e).  Holder merely presents a narrative of his legal conclusions and assumptions and his interpretations of others' motives and intent.  Such statements do not meet the requirements of Rule 56(e) and will not be considered.

In addition, Holder's affidavit and affidavits submitted by the defendants are based on the affiants' knowledge and belief.

The court will consider only those factual statements in the
affidavits that appear to be based on the affiants' personal
knowledge.

## Standard of Review

Summary judgment is appropriate when "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  A party opposing a properly supported
motion for summary judgment must present competent evidence of
record that shows a genuine issue for trial.  See Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable
inferences and all credibility issues are resolved in favor of
the nonmoving party.  See id. at 255.

"A fact is material only if it possesses the capacity to
sway the outcome of the litigation under the applicable law."
Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010)
(internal quotation marks omitted).  A genuine issue of material
fact, sufficient to avoid summary judgment, is an issue that a
reasonable jury could resolve in favor of either party.  Vera v.
McHugh, 622 F.3d 17, 26 (1st Cir. 2010); Saccucci Auto Group,

3

<u>Inc. v. Am. Honda Motor Co., Inc.</u>, 617 F.3d 14, 20, n.3 (1st Cir. 2010).

Under the local rules of this district, "[a] memorandum in support of a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried."  LR 7.2(b)(1).  In response, the nonmoving party must provide a memorandum in opposition to summary judgment with "a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require a trial."  LR 7.2(b)(2).  If the nonmoving party fails to provide the required opposition, "[a]ll properly supported material facts set forth in the moving party's factual statement shall be deemed admitted."  <u>Id.</u>

<u>Background</u>

As the court previously noted, Holder has a history of disputes with local and state authorities, among others, that originated with his contested divorce and custody proceedings in 2002.  <u>See, e.g.</u>, <u>Holder v. Sandown</u>, 585 F.3d 500 (1st Cir. 2009); <u>Holder v. Newton</u>, Civ. No. 08-cv-197-JL (D.N.H. 2008); <u>Holder v. New Hampshire</u>, Civ. No. 06-cv-371-PB (D.N.H. 2006);

<u>Holder v. New Hampshire</u>, Civ. No. 06-cv-252-PB (D.N.H. 2006);
<u>Holder v. Gienapp</u>, Civ. No. 06-cv-221-JD (D.N.H. 2006); <u>Holder v.</u>
<u>New Hampshire</u>, 06-cv-162-JD (D.N.H. 2006); <u>Holder v. Rockingham</u>
<u>County</u>, Civ. No. 04-cv-189-SM (D.N.H. 2004).  He also has pursued
grievances through state administrative and court proceedings.

     Although Holder's present claims in this case arise out of
events in 2007, he continues to repeat his litany of allegations
pertaining to past events.  As is noted above, only properly
supported statements of material facts will be considered for
purposes of deciding the defendants' motion for summary judgment.
Therefore, all of the history pertaining to the divorce and
custody dispute, along with Holder's related grievances and
litigation, will not be repeated here.

     On March 21, 2007, Holder wrote to United States Attorney
Thomas Colantuono.  Holder referred to a complaint he had
submitted to the United States Attorney General about the custody
proceeding, reiterating his view that the decision was racially
discriminatory.  He demanded that the United States Attorney
investigate his complaint and bring a federal court action to
terminate funding for the New Hampshire Marital Masters program.
Holder stated that he would "not be denied vindication of the
constitutional rights of [his] son and [Holder] against the black
robed bigots."  Dkt. no. 49-3.  He further stated:

> It doesn't matter to me if the person is wearing stars,
> bars, stripes or a black robe.  These bigots mean
> nothing to me.  I will use any means necessary,
> including the use of deadly force, to protect the
> constitutional rights of my children against the state
> sponsored racism and unlawful discrimination.  I urge
> your office act now to eliminate the racial bias and
> prejudice or anarchy will surely follow.  I assure you
> I will be the one leading that rebellion if it becomes
> necessary.

Id.

A week later, on March 28, 2007, the same day that this
court granted summary judgment in favor of the defendants, who
included Holder's former attorney, Laurie Gienapp, in one of
Holder's cases, Holder sent a similar letter to Margaret Nelson,
Chair of the Attorney Discipline Committee.  Holder reiterated
his complaints against Gienapp and others.  He then asserted that
based on his experience in the criminal justice field, he had "a
greater knowledge and comprehension of the laws than most
attorneys in this State," that he was a Justice of the Peace, and
that he could "discern corruption and cover-up when [he came]
across it."  Dkt. no. 49-4.  After expressing dissatisfaction
with the Committee's work, Holder stated:

> So you can understand me, the next corrupt
> attorney, court or state official that seeks to
> infringe upon my rights and interests, he/she may
> suffer dearly due to the lack of action from your
> office.  Honesty [sic], I don't care if the individual
> is wearing stars, bars, stripes, a badge or a black
> robe.  If your office is not going to protect my rights
> and interest, I will gladly assert them on my own and

6

in my own way, which means I will use any means
necessary to accomplish that task.  That also means I
will use up to and including the use of deadly force to
protect the constitutional rights of my children and I
and against racial bias and discrimination.

Id.

Based on his letters to Colantuono and Nelson, on April 26,
2007, the State of New Hampshire charged Holder with two counts
of criminal threatening in violation of RSA 631:4,I(d).  The New
Hampshire Attorney General also obtained a warrant for Holder's
arrest, which was forwarded to the Newton Police Department.
Chief Streeter had had experience with Holder in the past
pertaining to Holder's complaints about officers, prosecutors,
attorneys, and others involved in several domestic disturbances
with Holder and Holder's divorce and custody proceedings.
Streeter and another officer arrested Holder on April 26 without
incident, and Holder was arraigned the next day.

On the day of his arraignment, April 27, 2007, Holder and
the state entered into a written agreement in which Holder agreed
to surrender all weapons in his possession and in his home to the
Newton Police Department as a condition of his release on bail.
Holder's brother delivered the weapons to the police department.
On October 3, 2007, Judge Gerard Boyle, Concord District Court,
dismissed the criminal threatening charges against Holder,
concluding that no evidence had been presented to support the

charges.  Judge Boyle stated that while Holder's letters to
Colantuono and Nelson were "thoughtless, reckless and in poor
taste, and while they certainly caused concern and alarm, they
are insufficient to meet the elements of the offenses as alleged
by the State."  Dkt. 49-9.  The court ordered the state to return
Holder's bail to him.  The order did not address the return of
Holder's weapons.

On October 6, 2007, Holder contacted the police department
to arrange for picking up his weapons.  Holder called the
department again on October 9 and talked with Sergeant Michael
Jewett.  Jewett told Holder that he did not have information from
the court about returning the weapons.  When Holder called again
on October 11, Jewett told him he should contact the court, and
Jewett himself called the court but was unable to reach anyone.

Holder sent Streeter a letter on October 13, 2007, stating
that he was not required to obtain a court order for the return
of his weapons.  At Streeter's request, Jewett asked the Plaistow
District Court Prosecutor, Jill Cook, to research the question of
returning Holder's weapons.  Cook advised that because Holder
relinquished the weapons by agreement under bail conditions set
by the court, a court order was required for their return.
Despite Cook's opinion, Streeter decided to return the weapons
without requiring a court order.  On November 9, 2007, Streeter

notified Holder that he could collect his weapons at the station. Holder collected his weapons on November 22, 2007.

Holder had had a license to carry firearms since 1988. His license expired in April of 2007, and in November of 2007, he applied to renew his license. Streeter reviewed Holder's application and concluded that, based on Holder's history, which included accusations of misconduct, negative interactions with the police, and spiraling frustration with adverse decisions, he was not a suitable person to be granted a license. Holder appealed that decision to the Plaistow District Court. The court ordered Streeter to provide Holder with copies of materials that Streeter would rely on at the hearing. Streeter provided Holder with thirteen exhibits. Included in the exhibits were records of prior incidents involving Holder and the 2007 criminal threatening charges and accusations by Holder's former wife. After the hearing, Holder provided supplemental exhibits, including a statement by his former wife about one of the assault allegations and Judge Boyle's order dismissing the criminal threatening charges.

On March 12, 2008, Probate Judge James R. Patten ordered the Town of Newton to issue Holder a license to carry firearms. In the order, Judge Patten concluded that Newton had not provided

clear and convincing evidence that Holder was not suitable to be granted a license.

Holder brought suit in this court on October 7, 2009, alleging federal and state claims based on the delay in returning his weapons and on Chief Streeter's decision denying his application for a license to carry firearms.  Holder's claims are far from clear.  His amended complaint included 188 paragraphs, with six federal claims and ten state law claims.[1]  Four of the state law claims were previously dismissed, and one of the federal claims was dismissed to the extent it was based on the New Hampshire Constitution.

Holder's remaining claims are:

Federal Claims

(1) 42 U.S.C. § 1981 - the defendants denied Holder the right of equal protection, retaliated against Holder for his 2005 suit, violated RSA 651:5, retaliated against Holder for writing the letters to Colantuono and Nelson, and denied him equal protection in failing to grant him a license to carry.

(2) 42 U.S.C. § 1983 - the defendants violated Holder's rights under the First and Second Amendments by failing to return his weapons and denying his application for a license to carry a

---

[1]Because Holder did not number his causes of action and uses repetitive titles, it is difficult to distinguish his claims.

firearm, violated the Fifth and Fourteenth Amendments by
retaliating against Holder and punishing him because of his race
and because of his complaints against the government, and
violated unspecified constitutional rights in connection with an
incident in 2005.

(3) Violation of the Second Amendment – the defendants
violated Holder's Second Amendment rights by retaining his
weapons and denying him a license to carry firearms.

(4) Violation of the Second Amendment – the defendants
violated Holder's Second Amendment rights by retaining his
weapons.

(5) Violation of the First Amendment – the defendants
retaliated against Holder for expressing his grievances about the
conduct of the New Hampshire and federal courts by disclosing
personally sensitive information about Holder's arrests.

(6) 42 U.S.C. § § 1981, 1983, and 1985 – the defendants
violated Holder's rights, and engaged in a conspiracy, by
retaining his weapons and denying him a license to carry a
firearm, after he was charged with criminal threatening, based on
false charges and discrimination.

<u>State Law Claims</u>

    (1) Negligence in Hiring and Retaining

    (2) Negligence in Training and Supervision

    (3) Negligent Supervision

    (4) Intentional Infliction of Emotional Distress

    (5) Abuse of Process

    (6) Invasion of Privacy

<u>Discussion</u>

The defendants move for summary judgment, contending that Holder cannot prove his claims and that the undisputed facts show that they are entitled to judgment as a matter of law.  Holder responded to the defendants' motion with an objection that provides only a narration of his complaints and allegations, without addressing the defendants' statement of facts or the applicable legal issues.[2]  The motion is resolved as follows.

A.  <u>Federal Claims Against the City of Newton</u>

Holder names the Town of Newton as a defendant in his federal claims without explaining the basis of the town's liability.  Municipal liability for constitutional violations

---

[2]Although Holder is proceeding pro se, he has extensive experience litigating his claims in state and federal courts.

cannot be based on a theory of vicarious liability.  <u>Ashcroft v.
Iqbal</u>, 129 S. Ct. 1937, 1948 (2009); <u>Monell v. Dep't of Social
Servs. of New York</u>, 436 U.S. 658, 691 (1978).  Municipalities are
liable "only for underlying, identifiable constitutional
violations attributable to official municipal policy; the
municipality's failure to train or supervise its police officers
only becomes a basis for liability when 'action pursuant to
official municipal policy of some nature <u>caused a constitutional
tort</u>.'"  <u>Kennedy v. Town of Billerica</u>, 617 F.3d 520, 532 (1st
Cir. 2010)(quoting <u>Monell</u>, 436 U.S. at 691).

    Because Holder does not provide evidence of an official
municipal policy that underlies his claims of constitutional
violations, the Town of Newton is entitled to summary judgment on
all of Holder's federal claims.


B.  <u>Claims Under 42 U.S.C. § 1981</u>

    In his first and sixth federal claims, Holder lists § 1981
as a cause of action.  Section 1981 "protects the equal right of
'all persons . . .' to 'make and enforce contracts' without
respect to race."  <u>Domino's Pizza, Inc. v. McDonald</u>, 546 U.S.
470, 474–75 (2006) (quoting § 1981(a)).  As the defendants point
out, Holder makes no allegations and provides no evidence that
they in any way interfered with his right to make and enforce

contracts.[3]  Therefore, the defendants are entitled to summary
judgment on Holder's claims to the extent they are based on §
1981.

C.   Second Amendment Claims

        In several claims, Holder alleges that the defendants
violated his Second Amendment rights by failing to return his
weapons after the criminal threatening charges were dismissed
against him and by denying his application for a license to carry
firearms.  The defendants contend that their actions did not
violate the Second Amendment and that they are entitled to
qualified immunity.  The court previously considered qualified
immunity in the context of deciding Jill Cook's motion for
summary judgment and repeats the legal principles set forth in
the order granting that motion.

        Qualified immunity "protects government officials 'from
liability for civil damages insofar as their conduct does not
violate clearly established statutory or constitutional rights of
which a reasonable person would have known.'"  Cores-Reyes v.
Salas-Quintana, 608 F.3d 41, 51 (1st Cir. 2010) (quoting Pearson

---

        [3]Although Holder entered an agreement with the state to
relinquish his weapons as a bail condition, the defendants in
this case were not involved in that agreement.

14

v. Callahan, 129 S. Ct. 808, 815 (2009)); accord Giragosian v.
Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010).  Although Supreme
Court doctrine previously has required courts to determine
whether the plaintiff alleged or showed a constitutional
violation before considering whether the right was clearly
established, that order of analysis is not mandatory in certain
circumstances, such as when the question of violation of a
constitutional right is difficult and dependent on particular
factual circumstances.  Maldonado v. Fontanes, 568 F.3d 263, 270
(1st Cir. 2009).  For that reason, the court will address the
"clearly established" prong first in this case.

     "The law is 'clearly established' if courts have ruled that
materially similar conduct was unconstitutional, or if there is a
previously identified general constitutional principle that
applies with obvious clarity to the specific conduct at issue."
Cortes-Reyes, 608 F.3d at 52 (internal quotation marks omitted).
Courts that have considered the issue have determined in similar
circumstances that a right of individuals to possess and bear
firearms for private civilian purposes, as opposed to military
purposes, was not clearly established before 2008, when the
Supreme Court decided District of Columbia v. Heller, 128 S. Ct.
2783, 2799 (2008)).  See, e.g., Emerson v. City of New York, 2010
WL 2910661, at *7 (S.D.N.Y. July 19, 2010); Cardenas v. City of

<u>Chicago</u>, 2010 WL 2609866, at *7, n.8 (N.D. Ill. June 25, 2010)
(citing cases).  Further, in <u>McDonald v. City of Chicago</u>, 130 S.
Ct. 3020, 3025 & 3036 (2010), the Supreme Court held for the
first time that the Second Amendment applies to the states.

In granting summary judgment in favor of Jill Cook based on
qualified immunity, the court found the cases persuasive which
hold that the law was not clearly established before 2008 that
the Second Amendment protects the rights of individuals to
possess and bear firearms.  Therefore, to the extent Holder could
show that Streeter and Jewett violated his Second Amendment
rights, which has not been established in this case, they are
protected by qualified immunity.  Therefore, Streeter and Jewett
are entitled to summary judgment on all of Holder's federal
claims to the extent Holder asserts violations of his rights
under the Second Amendment.

D.  <u>First Amendment Violations</u>

Holder appears to allege that Streeter and Jewett violated
his First Amendment rights when they withheld his weapons after
the charges against him were dismissed and when Streeter denied
his application for a license to carry firearms.  He argues that
those actions were taken in retaliation for his prior lawsuits
and his complaints and grievances about the treatment he has

16

received by police, courts, and various federal and state officials and authorities.

"Claims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004).  To maintain a claim of retaliation, a plaintiff must show that the defendant's intent to retaliate against him was a substantial factor in motivating the adverse decision against him.  Collins v. Nuzzo, 244 F.3d 246, 251-52 (1st Cir. 2001).

In this case, there is no evidence of retaliation.  Jewett has demonstrated that he did not return Holder's weapons because he believed he needed a court order to do so not because of any animus against Holder.  Streeter has demonstrated that he investigated whether to return the weapons, elicited input about whether a court order was required, and then decided to return the weapons without an order.  He has also demonstrated that he denied Holder's application for a license to carry firearms because he concluded that Holder's history made him unsuitable for the license.  Although Streeter's decision was overturned on appeal, nothing shows that Streeter denied Holder's application because of retaliatory animus.

17

Jewett and Streeter are entitled to summary judgment on all of Holder's federal claims based on alleged violations of the First Amendment.

E.   Racial Discrimination

Holder, who is African American, alleges that Streeter and Jewett discriminated against him based on Holder's race.  "Under the Equal Protection Clause of the Fourteenth Amendment, the Constitution guarantees that those who are similarly situated will be treated alike."  Freedom from Religion Found. v. Hanover Sch. Dist., --- F.3d ---, 2010 WL 4540588, at *9 (1st Cir. Nov. 12, 2010).  To succeed on an equal protection claim, a plaintiff must show that he was treated differently from others who were similarly situated.  See Estate of Bennett v. Wainwright, 548 F.3d 155, 166 (1st Cir. 2008).

Holder provides no evidence that Streeter or Jewett treated others who were not African-American differently.  He offers no evidence that weapons were returned to non-African Americans more quickly than they were to him, or evidence that non-African Americans with similar history were granted licenses to carry firearms.  In the absence of any evidence to support a violation of equal protection, such claims fail.  Jewett and Streeter are

entitled to summary judgment on all of Holder's equal protection
claims.

F.   Other Constitutional Violations

     To the extent Holder mentions other constitutional
violations in his complaint, those claims were not sufficiently
alleged or developed in response to the motion for summary
judgment to be considered.  See Higgins v. New Balance Athletic
Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999).  Therefore, all
claims based on other constitutional theories are dismissed.

G.   Conspiracy

     Holder also alleges that Jewett and Streeter conspired with
others to violate his constitutional rights.  In the absence of a
constitutional violation, however, his conspiracy claims also
fail.  See Brennan v. Hendrigan, 888 F.2d 189, 195 (1st Cir.
1989).

H.   State Law Claims

     Holder brings six state law claims, which are based on the
court's supplemental jurisdiction derived from federal question
jurisdiction under 28 U.S.C. § 1331.  28 U.S.C. § 1367(a).
Because all of Holder's federal claims are resolved against him,

the court declines to exercise supplemental jurisdiction over the remaining state law claims.  § 1367(c).

II.   Motion for Subpoenas

Holder moves to have subpoenas issued to Chief Streeter and Jill Cook.  Because the claims in the case are resolved by summary judgment, the request for subpoenas is moot.

Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 49) is granted as to the plaintiff's federal claims.  The plaintiff's state law claims are dismissed without prejudice.  The plaintiff's motion for subpoenas (document no. 57) is denied as moot.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

December 15, 2010

cc:  Brian J.S. Cullen, Esquire
     Ralph Holder, pro se
     Shelagh C.N. Michaud, Esquire